**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey J. Cantu, | No. CIV 08-576-PHX-SMM (GEE) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Craig Apker, | |
| Respondent. | |

Pending before the court is a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2241. [doc. #1] The petitioner, Jeffrey J. Cantu, claims the respondent improperly took from him 41 days of good time credit in violation of his right to due process.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Edmonds for a Report and Recommendation.

Before the court are the petition and memorandum, the respondent's answer, and Cantu's traverse.

Summary of the Case

At the time of the alleged constitutional deprivation, Cantu was an inmate at the Federal Correctional Institute in Lompoc, California. (Respondent's answer, p. 2.) Cantu is currently serving a 120-month sentence of incarceration for Felon in Possession of a Firearm at the Federal Correctional Institute in Phoenix, Arizona. *Id.*

On August 5, 2007, Senior Officer J. Morales conducted a search of Cantu's living area. *Id.* Cantu lives with approximately 80 inmates in a "dormitory style unit." *Id.*, p. 5. Morales found seven bottles of tattoo ink, one tattoo needle, and approximately 100 books of postage stamps in Cantu's laundry bag. *Id.*, p. 2. Propped against Cantu's locker, Morales found a dustpan. *Id.* Inside the handle of the dustpan, Morales found four sharpened metal rods. *Id.* Cantu admitted he used the dustpan in his job as an orderly. *Id.*

Morales prepared an incident report charging Cantu with possession of a weapon and possession of anything not authorized. *Id.* On August 6, 2007, Lieutenant J. Bartlett gave Cantu a copy of the report. *Id.* Cantu chose not to make a statement to Bartlett. *Id.*

On August 7, 2007, Cantu appeared before the Unit Discipline Committee (UDC). *Id.* Cantu again chose not to make a statement. *Id.*, p. 3. The UDC referred the incident to the Discipline Hearing Officer (DHO). *Id.*

On August 28, 2007, Cantu appeared before DHO Spaulding. *Id.* Cantu admitted possessing the tattoo ink and postage stamps. He said he retrieved a tattoo gun and exited the area during the search. *Id.* He further admitted the dustpan was his but denied any knowledge of the metal rods. *Id.*

DHO Spaulding found Cantu possessed the contraband and the weapons. *Id.* He based his decision on (1) Cantu's decision to make no statement to Lieutenant Bartlett and again at the UDC hearing, (2) Cantu's admission that he possessed the tattoo ink and postage stamps, (3) the fact that the dustpan was found propped against Cantu's locker, and (4) Cantu's admission to Morales and at the DHO hearing that the dustpan was his. *Id.*, Exhibit 3. The DHO sanctioned Cantu to a loss of 41 days good conduct time for possession of a weapon and 13 days for possession of contraband. (Respondent's answer, p. 3.)

Cantu filed the instant petition on March 25, 2008. He claims the respondent improperly took away 41 days of good time credit in violation of his right to due process. He argues specifically the evidence before the DHO was insufficient to support his findings.

The respondent filed an answer on May 27, 2008. He concedes Cantu has exhausted his administrative remedies.

Discussion

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. Accordingly, they have a due process interest in the disciplinary proceedings that may take away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987), *cert. denied*, 487 U.S. 1207 (1988). "The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.*

The final decision to revoke good time credits must be based on "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. If so, then due process is satisfied. *Id.* The court need not examine the entire record, independently assess the credibility of the witnesses, or weigh the evidence. *Id.* at 455.

In the instant case, the evidence was sufficient to support the decision of the DHO. Cantu did not deny possession of the weapons when he had a chance to do so earlier in the disciplinary process. He admitted to possession of contraband indicating a propensity to violate prison regulations. The dustpan was found propped against Cantu's locker. Cantu admitted the dustpan was his. There was at least "some evidence" that Cantu possessed the weapons in the dustpan.

Cantu argues that because he lived in a dormitory style unit that housed some 80 inmates, the probability that the weapons were his was only one-in-eighty. This minimal probability, he maintains, falls below the "some evidence" threshold. *See, e.g., Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001) (Where "the only evidence linking Broussard to the bolt cutters is that they were found in an area in which he worked, but to which approximately one hundred inmates had access," the "some evidence" standard was not met.); *but see Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (Where weapons were found in a cell that housed the plaintiff and three other inmates, the "some evidence" standard was met.). Accordingly, Cantu

- 3 -

1 argues the DHO's decision violated due process because it was based on the fact that the 2 weapons were found "in his cell," and in this case, his "cell" contained some 80 inmates, far too 3 many to find constructive possession. *See* (Petitioner's Memorandum, p. 3.)  The court does 4 not agree.  Cantu misrepresents the basis for the DHO's decision.

5     In this case, the DSO found Cantu possessed the weapons, not because he lived in the 6 dormitory in which the weapons were found, but because the dustpan was found propped 7 against his locker and Cantu admitted the dustpan was his. (The DHO cited other evidence but 8 these two facts were presumably the most important.)  These facts directly connected Cantu to 9 the weapons.  Accordingly, the DHO did not need to rely on a theory of constructive possession. 10 Cantu's argument that the theory of constructive possession does not apply to his dormitory 11 style living unit is irrelevant.

12     Cantu further argues that because the weapons were well hidden, some other prisoner 13 could have put the weapons in the dustpan handle without his knowledge.  That may be, but the 14 fact that there is evidence suggesting Cantu's innocence is irrelevant.  Due process only requires 15 that there be "some evidence" supporting the disciplinary decision.  It does not require that the 16 supporting evidence outweigh the evidence to the contrary. *Hill*, 472 U.S. at 455.

17     Recommendation

18     The Magistrate Judge recommends that the District Court, after its independent review 19 of the record, deny the petition. [doc. #1]

20     Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 21 10 days of being served with a copy of this Report and Recommendation.  If objections are not 22 timely filed, that party's right to de novo review may be waived.

23     The Clerk is directed to send a copy of this Report and Recommendation to the petitioner 24 and the respondent.

25     DATED this 29th day of July, 2008.

26
27
28     _____
    Glenda E. Edmonds
    United States Magistrate Judge